IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FREEMAN MANAGEMENT CORPORATION, a Tennessee corporation, and FREEGARD PARTNERS I, FREEGARD PARTNERS III, FREEGARD PARTNERS IV, FREEGARD PARTNERS V, FREEGARD PARTNERS VI, and FREEGARD PARTNERS VIII, each a Tennessee general partnership, <br><br> Plaintiffs, <br><br> v. <br><br> SHURGARD STORAGE CENTERS, LLC, and PUBLIC STORAGE, INC., <br><br> Defendants. | Case No. 3:06-00736 <br><br> Judge Wiseman <br> Magistrate Knowles |

**DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS**

Defendants Shurgard Storage Centers, LLC ("Shurgard") and Public Storage, Inc. ("Public Storage") submit this memorandum in support of their motion to dismiss all claims asserted by Freeman Management Corporation (Counts I, VI and VII), and Counts V, VI and VII in their entirety.

**Allegations in the Complaint**

Plaintiffs Freeman Management Corporation ("FMC"), and Freegard Partners I, Freegard Partners III, Freegard Partners IV, Freegard Partners V, Freegard Partners VI, and Freegard Partners VIII (collectively the "Freegard Partnerships"), filed a Complaint on July 20, 2006, alleging breach of contract, interference with contract and prospective contract, inducement to breach, and civil conspiracy, and seeking declaratory and injunctive relief. In essence, Plaintiffs

complain that their rights were violated when Shurgard: (1) invoked the deadlock provisions and replaced the Freegard Partnerships as Managing Venturer of the various Shurgard-Freeman Joint Ventures; (2) removed FMC as the property manager for the joint ventures; and (3) assigned Public Storage as the property manager for the joint ventures. Without attaching copies, Plaintiffs' allegations concern the terms of an Affiliation and Development Agreement between Shurgard and FMC; joint venture agreements between Shurgard and various Freegard Partnerhips; management services agreements (also referred to as "MSAs") between a particular joint venture and FMC delegating property management duties to FMC; and a merger agreement between Shurgard and Public Storage dated March 7, 2006, which, according to the Complaint, was the triggering event for the conduct alleged in the Complaint. Copies of those instruments (or in the case of the joint venture and master services agreements, specimens thereof) are attached hereto as Exhibits 1, 2, 3 and 4.[1] Without purporting to fully summarize the function of the foregoing agreements, the Affiliation Agreement set up a structure and format for various joint venture agreements (or in the case of Freegard Partners V (Memphis Properties LLC), an LLC agreement). The joint venture agreements set forth the parties' respective investments and percentage interest in properties owned by the joint venture and provided certain rules of governance with respect to its operation of the joint venture. The joint ventures, in turn, originally contracted with FMC to provide on-site property management services pursuant to the MSAs. *See* Compl. ¶¶ 11 (A-C); Exhibits 1-3.

---

[1] The cited exhibits as well as unreported cases are included in an Appendix filed in support of this motion. The various agreements included in the Appendix do not include the voluminous exhibits attached to each agreement because they are not relevant to the present dispute. The Sixth Circuit has recognized that documents cited in, but not attached to, a complaint may be provided by the Defendant and considered by the Court in the context of a motion to dismiss. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (citing with approval *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

**Argument**

A motion to dismiss should be granted where no set of facts are alleged that would entitle the plaintiff to relief. "Although a motion to dismiss should be granted only if the plaintiff can prove no set of facts which would entitle her to relief, [the] court should not assume facts that were not pled." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006). Moreover, "[t]he court need not accept legal conclusions or unwarranted factual inferences as true." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 930 (6th Cir. 2006). Because Plaintiffs fail to allege facts sufficient to sustain Counts V, VI and VII, and Counts I, VI and VII with respect to FMC, the Court should dismiss these claims.

**I.    COUNTS V, VI, AND VII SHOULD BE DISMISSED.**

In Counts V and VI, Plaintiffs claim that Public Storage is liable to the Freegard Partnerships and FMC, respectively, for interference with contract and prospective contract, and inducement to breach existing contracts. Plaintiffs claim in Count VII that both Shurgard and Public Storage are liable to all Plaintiffs for civil conspiracy. Dismissal of these claims is appropriate for two reasons. First, Defendants should be treated as constituting a single entity at all times relevant to the Complaint—a status fatal to each of these claims. Second, without regard to the fact that the Defendants should be treated as a single entity in evaluating the validity of Plaintiffs' claims, the Complaint fails to allege one or more critical elements required to establish each claim.

**A.    Public Storage and Shurgard should be treated as a single entity such that no claims for conspiracy or interference with contract or prospective business advantage may be asserted in Counts V, VI and VII.**

In Tennessee, a corporation is legally incapable of conspiring with itself or its agents. "Because the law requires two or more persons or entities to have a conspiracy, a civil

3

conspiracy is not legally possible where a corporation and its alleged co-conspirators are not separate entities, but instead stand in a principal-agent relationship." *Trau-Med of Am., Inc. v. Allstate Ins., Inc.*, 71 S.W.3d 691, 703 (Tenn. 2002). The same principle has been recognized in the context of inducement to breach a contract and interference with prospective contractual relations. The Tennessee Supreme Court has held that there is a privilege to interfere with contractual relations "when there is a unity of interest between the interfering party and the breaching party." *Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779, 782 (Tenn. 2000). Thus, "a parent corporation is privileged to interfere in the contractual relations of a wholly-owned subsidiary." *Id.* at 784.[2] Likewise, the Tennessee Court of Appeals has held that an inducement to breach a contract claim must fail where the various defendants were all "direct or indirect partners" of the party that breached a settlement contract. *Nelson v. Metric Realty*, 2002 Tenn. App. LEXIS 698, at *49-50 (Tenn. Ct. App., Sept. 26, 2002); *cf. Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996) (holding that there can be no interference under Georgia law when "the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations," "the defendant would benefit economically from the alleged injured relations," or "both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations"); *Seabury Mgmt., Inc. v. Prof'l Golfers' Assoc. of Am., Inc.*, 878 F. Supp. 771, 777, 785 (D. Md. 1994) (applying the parent/subsidiary privilege because "the PGA and the MAPGA are in a relationship which was effectively that of a parent corporation and its subsidiary," even though "MAPGA is not a wholly-owned subsidiary of the PGA," because "as pertinent to this

---

[2] While the holding of this case was limited to a situation in which the subsidiary was 100% owned by the parent at the time of the complained of conduct, *Waste Conversion*, 33 S.W.3d at 783, a logical application of this doctrine would extend to conduct initiated before the closing of the merger, but after a binding merger agreement was executed.

case the PGA and [MAPGA] function as a single economic unit with the PGA possessing ultimate control over the actions of [MAPGA]").

It is undisputed that Shurgard and Public Storage entered into and publicly announced a merger agreement on March 7, 2006 (which closed on August 22, 2006). The overarching claim in the Complaint is that pursuant to this merger agreement, Public Storage acted as the parent corporation, controlling the actions of its putative subsidiary, Shurgard. *See* Compl. ¶¶ 15-16; 18-19; 24; 26; 31; 38.

While there are exceptions to the foregoing doctrines, the burden is on the Plaintiffs to plead and prove facts that merit applications of the exceptions. They do not. Corporate agents can be liable for "intracorporate" conspiracy only in the event it is alleged they "acted outside the scope of their [agency] and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation." *Trau-Med*, 71 S.W.3d at 704. The right of a parent to "interfere" or direct the contractual relations of a subsidiary can be lost if the parent corporation (1) "act[s] contrary to [the] subsidiary's economic interests" or (2) use[s] wrongful means." *Waste Conversion*, 33 S.W.3d at 784; *see also id.* at 783-84 (holding that the plaintiff bears the burden of proof on these exceptions, once it is established that the defendant is the parent of the breaching party). Far from alleging that Defendants acted contrary to each other's interests, Plaintiffs have alleged that Defendants worked together to further their combined economic interests pursuant to the merger agreement. *See* Compl. ¶¶ 15-16, 18-19. Nor have Plaintiffs alleged the type of "fraud, misrepresentation, threats, violence, defamation, trespass, restraint of trade, intimidation, molestation, or any other wrongful act recognized by statute or common law" required to invoke the "wrongful means" exception to the right to interfere in the business relations of a subsidiary. *Waste Conversion*, 33 S.W.3d at 784.

5

### B. Plaintiffs fail to allege the required elements of the respective claims.

Plaintiffs assert three claims against Defendants in Counts V, VI, and VII: inducement to breach a contract, interference with business relationships, and civil conspiracy. Plaintiffs fail to allege elements required under each claim.

#### 1. Count V

The Freegard Partnerships charge Public Storage in Count V with interference with contract and prospective contract and inducement to breach, alleging that Public Storage directed Shurgard to (1) terminate Freegard as the managing venturer of the joint ventures and (2) execute new management services agreements with Public Storage (rather than with FMC). Compl. ¶¶56-58. Freegard contends that such conduct was "malicious" without providing any facts to support such a characterization. *Id.* at 60; 62.

##### (a) The Complaint fails to sufficiently allege an inducement of breach of contract.

The elements of inducement to breach a contract are: "(1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that a breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff." *Givens v. Mullikin*, 75 S.W.3d 383, 405 (Tenn. 2002). There can be no claim founded on an alleged breach of contract for the termination of Freegard as managing venturer of the joint ventures for the reason that the joint venture agreement permits Shurgard to terminate Freegard as the managing venturer in the event the parties do not unanimously agree. *See* Exhibit 2 at § 5.2 (b) (App. 46) ("If the Joint Venturers are not able to reach a Unanimous Decision . . . either Joint Venturer shall have the right to invoke the provisions of this section 5.2(b). . . . In the event Shurgard elects to invoke the provisions of this

Section 5.2(b), then the following shall occur: (A) Shurgard shall immediately become the Managing Venturer . . . ."). And both aspects of this claim--that Public Service induced a breach of contract by directing the termination of Freegard as managing venturer and dictating its own employment as property manager--fail because the Complaint does not make a legally adequate allegation that this conduct was undertaken with the requisite malice. "Malice or ill will must be established in order to recover for tortuous interference with another's business. Malice is also a necessary element to an action for common law and statutory inducement to breach." *Testerman v. Tragesser*, 789 S.W.2d 553, 556-57 (Tenn. Ct. App. 1989) (holding that the plaintiff had failed to establish the necessary malice for either intentional interference with business relations or intentional interference with contract where she had not established the malice necessary for an award of punitive damages on her successful trespass claim); *see also Waste Conversion*, 33 S.W.3d at 784 n.2 (stating that "malice is part of the general cause of action [of interference with contract] and must be shown in all cases").

### (b) The Complaint fails to sufficiently allege interference with prospective contract.

Freegard also alleges that it had the right to expect that its status as managing venturer would remain in effect, such that the alleged direction by Public Storage that it be terminated pursuant to § 5.2 (b) of the joint venture agreements was wrongful. Compl. ¶¶56-57; 60. The elements of interference with business relationships are: "(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means." *Trau-Med*, 71 S.W.3d at 701.

The fourth element, improper motive or improper means, requires more than Plaintiffs have alleged. Improper motive requires an allegation "that the defendant's predominant purpose was to injure the plaintiff." *Id.* at 701 n.5; *see* also *Terra Aqua Gabions, Inc. v. Midwest Constr. Prods. Corp.*, 2006 Tenn. App. LEXIS 505, at *10 (Tenn. Ct. App., July 28, 2006) (holding that the "facts alleged by [the plaintiff], presumed to be true for the purposes of the 12.02(6) motion, do not support a claim that [the defendant's] predominant motive was to injure [the plaintiff]" because, assuming plaintiff's allegations of intentional misrepresentations to be true, "there is nothing to suggest that [the defendant's] predominant purpose was not simply to compete with Terra Aqua and all other manufacturer's of gabions"). Improper means for purposes of interference claims include such acts as "violations of statutes, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuses of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition." *Trau-Med*, 71 S.W.3d at 701 n. 5 (internal citations omitted). Far from alleging improper motive, the Complaint alleges that Defendants were acting to further a combined business interest--as is their right at least in the context of a merger, not to harm Plaintiffs.

2. **Count VI**

   (a) **The Complaint does not sufficiently allege a claim for inducement for breach of contract.**

Count VI complains that FMC's rights to act as property manager for the various joint ventures were violated by Public Storage directing the termination of the corresponding management services agreements, and by its interference with FMC's expectations of future such

8

Case 3:06-cv-00736   Document 15   Filed 09/18/06   Page 8 of 13 PageID #: 102

employment. *See* Compl. ¶¶ 11 (C); 25 (C); 64; 66-67. While Count VI alleges that FMC's management services agreements were "terminated", it does not allege that such terminations constituted a breach of the agreements. This is so because Plaintiffs concede that the "termination of the Affiliation Agreement operated automatically to terminate the various management agreements between the Shurgard-Freeman Joint Ventures and FMC." Compl. ¶ 23.[3] As a result, FMC had no contractual right that was breached. Shurgard acted within its legal rights by terminating the Affiliation and Development Agreement, which, as the Complaint asserts, simultaneously terminated the Management Services Agreement with FMC. Without a breach of contract (the fifth element of the claim, *see* discussion *supra* at 5), any claim for inducement to breach must fail.

### (b) The Complaint does not sufficiently allege a claim for interference with prospective contract.

Similar to the claims of Freegard in Count V, FMC alleges that Public Storage caused Shurgard to interfere with FMC's future prospects to be the property manager for each of the joint ventures. Yet as is demonstrated above, those relationships terminated automatically upon the termination of the Affiliation Agreement—a termination that was entirely proper under Amendment 4 to that Agreement. *See* discussion at n. 3. If a party to a terminable contractual relationship can levy a claim for interference with prospective contractual relationship based on these allegations, then no competitor can ever supplant another with an offer of better performance or lower price. Moreover, FMC's claims for interference with business

---

[3] Nor does the Complaint allege that the termination of the Affiliation Agreement was wrongful. That agreement was terminable by either of the parties pursuant to Amendment 4 to Affiliation and Development Agreement ("The term of the Affiliation Agreement and the Termination Letter shall continue through June 30, 2005 and the term shall continue after June 30, 2005 on a month-to-month basis provided that either SSCI or FMC may terminate the Affiliation Agreement or the termination date referenced in the Termination Letter on any date after June 30, 2005 upon thirty (30) days prior written notice by either party to the other."). *See* Exhibit 1 at App. 34. As admitted by Plaintiffs, termination of the Affiliation Agreement automatically terminated the management services agreements. *See* Exhibit 3 at App. 64-65.

relationships must fail because it has not alleged facts that would support a finding that Public Storage had acted with the requisite wrongful purpose or means, that is, there are no allegations of violence, threats, fraud or any of the other conduct that *Trau-Med* describes as necessary to a claim for interference with prospective contract. *See* discussion *supra* at 8.

### 3. Count VII

The Complaint alleges that all of the actions of the Defendants were undertaken pursuant to a conspiracy and that the Defendants utilized "wrongful" means to accomplish the purpose of the conspiracy. Civil conspiracy is "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med*, 71 S.W.3d at 703. Plaintiffs have failed to allege any unlawful means by Defendants. Moreover, Plaintiffs have failed to allege any unlawful purpose or unlawful act by Defendants. Therefore, Plaintiffs claims for civil conspiracy must fail.

## II. ALL CLAIMS BY FMC SHOULD BE DISMISSED.

Not only should FMC's claims in Counts VI and VII be dismissed for the reasons discussed above, *all* claims brought by FMC should be dismissed from this action because the Complaint does not allege that FMC had any cognizable rights, contractual or otherwise, that were violated. Moreover, FMC lacks standing to make its request for declaratory relief in Count I.

### A. FMC's rights under the contracts were not violated.

FMC had no contractual right to continue as property manager. As alleged in the Complaint, the Management Services Agreements ("MSAs") were all terminated when the Affiliation and Development Agreement was terminated. *See* Exhibit 3 at App. 64-65. Under

the Fourth Amendment to that agreement, Shurgard had an absolute right to terminate the Affiliation and Development Agreement. *See* Exhibit 1 at App. 34. FMC had no contractual right to the continuation of the Affiliation and Development Agreement, either as a party to that agreement or as property manager for the Shurgard-Freeman Joint Ventures, and FMC does not allege that it did.

After the MSAs were terminated, FMC was, at best, an employee-at-will, and there can be no breach of contract for termination of such a relationship. "[A]n employee-at-will may be discharged without breach of contract for good cause, bad cause or no cause at all, without being thereby guilty of legal wrong." *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn. 1997).

### B. FMC lacks standing to request declaratory relief in Count I.

FMC seeks a declaration in Count I that Shurgard should be replaced by the Freegard Partnerships as the Managing Venturer of the Shurgard-Freeman Joint Ventures. FMC, however, is not a party to the Joint Ventures and has no rights under the Joint Venture Agreements. *See* Compl. ¶¶ 11-12. Therefore, FMC is not entitled to a declaration of rights under the Joint Venture Agreements.

Moreover, FMC has no standing to request this relief – that the Freegard Partnerships replace Shurgard as the Managing Venturer. Standing "requires the court to decide whether the party has a sufficiently personal stake in the outcome of the controversy to warrant the exercise of the court's power on its behalf." *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Co.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). "The primary focus of a standing inquiry is on the party not on the merits of the claim." *Id.* Even if the Court granted the requested relief, the relief would only affect another party. *Cf. Laurel Valley Prop. Owners Ass'n v. Hollingsworth*, 2004 Tenn. App. LEXIS 410, at *27-29 (Tenn. Ct. App., June 29, 2004)

11
Case 3:06-cv-00736    Document 15    Filed 09/18/06    Page 11 of 13 PageID #: 105

(holding that the plaintiffs did not have standing to seek declaratory relief with respect to a road that they did own). FMC have no outcome in the resolution of this claim, therefore Count I should be dismissed with respect to Defendant FMC.

## CONCLUSION

Plaintiffs have failed to allege facts sufficient to sustain Counts V, VI, and VII because Defendants should be treated as a single entity during all times relevant to the Complaint and because Plaintiffs have not pleaded facts that would establish critical elements of these claims. All claims asserted by FMC should be dismissed because Plaintiffs fail to allege that FMC had any cognizable rights that were violated and, with respect to Count I, FMC lacks standing to assert the relief requested.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: ___/s/ Thomas H. Dundon___
    Thomas H. Dundon, No. 004539
2000 One Nashville Place
150 Fourth Avenue, North
Nashville, TN 37219-2498
(615) 244-1713
***Attorney for Defendant Shurgard Storage Centers, LLC and Public Storage, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic filing system, this the 18th day of September, 2006:

> Jeffrey A. Greene
> Jeffrey A. Greene, P.C.
> One Burton Hills
> Suite 330
> Nashville, TN 37215
>
> ***Attorney for Plaintiffs Freeman Management Corporation, et al.***

                                                    /s/ Thomas H. Dundon