IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FREEMAN MANAGEMENT CORPORATION, a Tennessee corporation, and FREEGARD PARTNERS I, FREEGARD PARTNERS III, FREEGARD PARTNERS IV, FREEGARD PARTNERS V, FREEGARD PARTNERS VI, and FREEGARD PARTNERS VIII, each a Tennessee general partnership,<br><br>    Plaintiffs,<br><br>v.<br><br>SHURGARD STORAGE CENTERS, INC., and PUBLIC STORAGE, INC.,<br><br>    Defendants. | Case No. 3:06cv0736 |

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Dissociation Claims (Doc. No. 28). The motion has been fully briefed and is ripe for consideration. For the reasons set forth below, the Court finds that the motion must be denied.

**I.    STANDARD OF REVIEW**

Under Rule 12 of the Federal Rules of Civil Procedure, a defendant may seek dismissal of the complaint, or certain causes of action set forth therein, based upon the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the plaintiff. *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). The Court is not required, however, to "accept as true legal conclusions or unwarranted factual inferences." *Bovee v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) (internal quotation marks and citation omitted).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted); *see also* Fed. R. Civ. P. 10 ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). In addition, however, the Court may consider documents introduced by the defendant, even if they were not attached to the initial complaint, so long as they were referenced in the complaint and are central to the plaintiff's claim. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* (citation omitted). Consequently, the Court may consider the contracts referenced and relied upon in the First Amended Complaint and submitted by the Defendants in support of their motion, without converting the motion into one for summary judgment under Rule 56.

The Court will not, however, consider any other material outside the pleadings that would require the Court to convert the present motion into one for summary judgment.

## II. BACKGROUND

The facts relevant to the Defendants' motion were set forth exhaustively in the Court's Memorandum Opinion addressing the Defendants' first Motion to Dismiss. (Doc. No. 30.) Familiarity with those facts will be presumed here, and only those facts of specific relevance to the present motion will be articulated.

Plaintiffs, various FreeGard Partnerships, each entered into a separate Joint Venture Agreements with Shurgard Storage Centers, Inc. ("Old Shurgard") in or around 1994. Old Shurgard, which was named as a defendant in the original complaint, ceased to exist as an independent entity as of August 22, 2006 when it merged into a newly formed entity named Shurgard Storage Centers, LLC ("New Shurgard"), a Delaware limited liability company and a wholly owned subsidiary of defendant Public Storage, Inc. New Shurgard was substituted as the appropriate defendant in place of Old Shurgard after this action commenced.

The Joint Venture Agreements entered into by and between Old Shurgard and the Freegard Partnerships all contain language barring either party to the Agreement from transferring its interest in the joint venture to any other party or entity without the written permission of the other joint venturer as follows:

> (a) Except as set forth below, no Joint Venturer shall sell, assign, transfer, mortgage, charge or otherwise encumber . . . or contract to do or permit any of the foregoing, whether voluntarily or by operation of law (herein sometimes collectively called a "transfer"), any part or all of its Joint Venture interest . . . without the written consent of the other Joint Venturer and any attempt to do so shall be void. Furthermore, no Joint Venturer shall have the right, and each Joint Venturer hereby agrees not, to withdraw from the Joint Venture nor to dissolve, terminate or liquidate . . . the Joint Venture except as provided in this Agreement. Notwithstanding the foregoing, Shurgard shall be entitled to transfer part or all of its Joint Venture interest to a wholly owned subsidiary without the consent of FreeGard.
>
> (b) Except as provided in this Section 6, any person who acquires, in any manner whatsoever, the interest, or any portion thereof, of a Joint Venturer, shall not be a Joint Venturer without the prior written approval of the other Joint Venturer.

(Doc. No 29, Ex. A (hereafter, "Joint Venture Agreement" or "JVA"), §§ 6.1(a) and (b).)

Procedurally, while Defendants' first Motion to Dismiss was pending, Plaintiffs filed a motion to amend their complaint. Defendants did not oppose the motion to amend, but requested either that they be permitted to file a new motion to dismiss and accompanying memorandum, or to file a reply to Plaintiffs' response to the motion to dismiss. The Court granted the motion to amend (Doc. No. 25) and permitted Defendants to file a reply brief. Ultimately, the original motion to dismiss was granted in part and denied in part. Defendants have now filed this second motion to dismiss to address new claims set forth in the Amended Complaint that were not contained in the original Complaint.

In particular, Defendants seek dismissal of portions of Counts I and II of the Amended Complaint that Defendants characterize as "dissociation claims." Both Counts I and II seek declaratory relief only. The language added to the Amended Complaint to which Defendants object includes allegations that "Old Shurgard wrongfully dissociated as a partner of the Shurgard-Freeman Joint Ventures" and that the FreeGard Partnerships are therefore "entitled to a declaration that the New Shurgard is not a partner of the Shurgard-Freeman Joint Ventures."[1] (Doc. No. 26 (Am. Compl.) ¶ 51.) Similarly, Count II of the complaint was amended to seek an injunction against New Shurgard from "holding itself out as a partner" of the joint ventures and "from seeking to exercise any powers of a partner" under the joint venture agreements. (Doc. No. 26 ¶ 54.)

---

[1]The Amended Complaint actually states in Count I that all Plaintiffs are entitled to such a declaration, but the Court previously determined that Plaintiff Freeman Management Corporation ("FMC") did not have a sufficient interest in the subject matter of Count I to have standing under the Declaratory Judgment Act to seek the particular relief sought.

The sole basis for the Defendants' motion to dismiss is their contention that the merger between Old Shurgard (Shurgard, Inc.) and New Shurgard (Shurgard LLC) did not constitute a "transfer" of Old Shurgard's interest in the joint ventures under either Tennessee or Washington law, and therefore that Plaintiffs' dissociation claims should be dismissed as a matter of law. Plaintiffs, on the other hand, contend that the merger effected a transfer of Old Shurgard's interest by operation of law and as such was in violation the Joint Venture Agreements' express prohibition against such transfers without the prior written consent of the other Joint Venturer. The issue presented is a question of law appropriate for consideration in a motion to dismiss under Rule 12(b)(6).

## III.  DISCUSSION

### A.  Choice of Law

Because this is a dispute over which the Court has diversity jurisdiction, the Court must apply substantive state law to the issue presented. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). The "Agreement and Plan of Merger" whose terms governed the actual merger of Old Shurgard into New Shurgard specifies that the merger was to occur "in accordance with the Washington Business Corporation Act . . . and the Delaware Limited Liability Company Act." (*See* Doc. No. 16, Ex. 4.) The Joint Venture Agreements, however, provide that they are to be "governed, construed, and enforced in accordance with the laws of the State of Tennessee." (JVA § 11.4(d).) Because the issue presented here involves construction of the Joint Venture Agreements only, the Court will apply Tennessee law.

Generally speaking, a federal court sitting in diversity must apply state law in accordance with the decisions of the state's highest court. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 517 (6th Cir. 2003). The Tennessee Supreme Court has not directly addressed the issue raised herein. When evaluating an undecided question of Tennessee law, a federal court sitting in diversity must make the best prediction, even lacking direct precedent, of what the Tennessee Supreme Court would do if it were confronted with the question. *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 577 (6th Cir. 2004). Where a state's highest court has not spoken on a precise issue, a federal court, sitting in a diversity case, may not disregard a decision of the state appellate court on point "unless it is convinced by other persuasive data that the highest court of the state would decide

otherwise." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1140 (6th Cir. 1986) (internal quotations omitted).

### B. Whether a Merger Constitutes a Transfer of Interest

The issue presented is whether the merger of Old Shurgard into New Shurgard constitutes a transfer of Old Shurgard's interest in the Joint Ventures "by operation of law," which, pursuant to § 6.1 of the Joint Venture Agreement, requires the written consent of the other Joint Venturer. Although Defendants are correct, as discussed below, that there appear to be two distinct lines of thought as to how that question should be answered, this Court finds that the merger in this case constituted a transfer of interest by operation of law under Tennessee law.

In fact, the Tennessee Supreme Court appears to have concluded that property rights and other interests that "vest" in a surviving corporation as a result of a merger actually transfer by operation of law. In *Mapco Petroleum, Inc. v. Basden*, 774 S.W.2d 598, 600 (Tenn. 1989), the issue was whether the plaintiff had an effective permit to sell beer as a result of merging with a company that possessed such a permit. The plaintiff admitted that a contractual assignment or sale of a permit to sell beer was invalid under Tennessee case law. The plaintiff argued, however, "that there is a significant distinction between a sale or assignment by contract which purports to pass title from one to another, and a merger of corporations whereby a statute operates to vest a surviving corporation with all possible interests of its constituent corporation." *Id.* at 600. On the basis of the merger statute, the plaintiff asserted that "when it became vested with all of the interests of its constituent corporation, the beer permit in question also vested in it by operation of law and that no further action on its part was necessary, that no new permit needed to be issued in any other name." *Id.* at 599. The Tennessee Supreme Court was not persuaded and held that "a permit to sell beer is not transferable by merger and does not pass to a surviving corporation." *Id.* at 600. Although the court did not expressly address Tennessee's merger statute, implicit in its holding was the assumption that a merger results in the transfer by operation of law of the merging corporation's property and interests, unless otherwise prohibited.

A few years later, the Tennessee Court of Appeals issued an unreported opinion that reached a similar conclusion in a slightly different context. In *L & L Trucking, Inc. v. Hewlett*, No. 01-A-01-9105-BC00159, 1992 WL 69635 (Tenn. Ct. App. April 8, 1992), Southern Trucking Corp. merged into L & L Trucking, Inc. Prior to the merger, Southern held a Certificate of Convenience and Necessity from the

Tennessee Public Service Commission ("PSC").  At that time, Tennessee statute prohibited the transfer or sale of the Certificate except with the permission of the PSC, and made it illegal for a motor carrier to use the public highways without such a Certificate.  *See* Tenn. Code Ann. § 65-15-107(d) (1991).[2]

Pursuant to the Tennessee Business Corporation Act in effect at the time the case was decided, "[w]hen a merger takes effect . . . , [t]he title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment." Tenn. Code Ann. § 48-21-106(a)(2) (1991).[3]  The question in *L & L* was whether the merger of Southern into L & L and the resulting vesting of the Certificate in L & L was a "transfer" of the permit that required the PSC's permission pursuant to the statute.  L & L insisted that "a merger of corporations is not a transaction which requires Commission approval under the transfer provisions of T.C.A. § 65-15-107(d)," and that the "merger did not result in a 'transfer' of the specific property of the merging corporations." *Id.* at *3.  The Tennessee Court of Appeals disagreed, stating:  "We find no exceptions under the statute for transfer of certificates.  We are of the opinion that a transfer of certificate by merger requires Commission approval. . . ." *Id.*

In support of this finding, the court cited approvingly a Sixth Circuit opinion that had likewise rejected the argument that a statutory merger does not result in any "transfer" of the merging corporation's interests, stating:  "A transfer is no less a transfer because it takes place by operation of law rather than by a particular act of merging." *Id.* (quoting *PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090, 1096 (6th Cir. 1979)).  The Tennessee Court of Appeals also acknowledged, and rejected, the plaintiff's argument based upon language from the Model Business Corporation Act, adopted in relevant part by Tennessee, Tenn. Code Ann. § 48-21-106 (1991), providing that a merger is not a conveyance or transfer giving rise to "claims of reverter or impairment of title based on a prohibited conveyance or transfer." *Id.* (quoting Revised Model Business Corporation Act, § 11.06 (1984)).  In light of that language, the court observed:

---

[2]Subsection (d) was deleted by amendment in 1999.  1999 Pub. Acts, ch. 97, §§ 6-8.

[3]The Tennessee Business Corporations Act was amended effective January 1, 1995 (1994 Pub. Acts, ch. 776, § 41), and this provision was moved and modified slightly.  As amended, the statute states:  "When a merger becomes effective . . . [a]ll property owned by each corporation or limited partnership that is a party to the merger shall be vested in the surviving corporation without reversion or impairment." Tenn. Code Ann. § 48-21-108(a)(2) (2006).

> The merger does not give rise to claims of reverter or of impairment of title based on a prohibited conveyance or transfer. The title of the asset vested in the merged corporation is not impaired. A reversionary interest is "[t]he interest which a person has in the reversion of lands or other property. A right to the future enjoyment of property, at present, in the possession or occupation of another." Black's Law Dictionary, p. 1320 (6th ed. 1990).
>
> When the certificates were transferred to L & L there were no reversionary interest or impairment of title under the Corporations Act. . . . The merger was effected by the parties and the transfer was a result of their act of merging.
>
> If the legislature had desired or intended to exempt transfers [of Certificates of Convenience and Necessity] from Tennessee Code Annotated, Section 65-15-107(d) as a result of mergers, it could have done so. However, all transfers of authority are subject to Tennessee Code Annotated, Section 65-15-107(d).

*Id.* at *3–*4 (internal quotation marks and citation omitted).

In other words, the Tennessee Court of Appeals, like the Tennessee Supreme Court before it, clearly regarded a conveyance occurring as a result of a merger to be a transfer by operation of law, despite the absence of the word "transfer" in Tennessee's merger statute. Although the specific factual details of *L & L* and *Mapco* are different from those presented here in that the prohibitions on transfers in those cases were statutory in nature and the interest the plaintiffs claimed "vested" without an actual assignment or transfer were state-issued authorizations, the core question was the same as that presented here: whether a merger of corporations results in a transfer of property or other interests by operation of law. *Mapco* and *L & L Trucking* both answered "yes" to that question, and those holdings are binding here. The language of the Joint Venture Agreements in the case at bar expressly applies to, and prohibits, transfers "by operation of law" (JVA § 6.1(a)), and the merger of Old Shurgard into New Shurgard effected just such a transfer. *Accord Citizens Bank & Trust Co. of Md. v. Barlow Corp.*, 456 A.2d 1283, 1289 (Md. 1983) (holding that, under a commercial lease to a corporate tenant, the merger of the tenant into another corporation violated a non-assignment clause expressly including assignments "by operation of law," because the transfer of property from the extinguished corporation to the surviving corporation was by force and effect of statute, and thus was a transfer by operation of law); *Star Cellular Tel. Co., Inc. v. Baton Rouge CGSA, Inc.*, Civ. A. No. 12507, 1993 WL 294847, at *7 (Del. Ch. Aug. 2, 1993) ("[T]he word 'transfer' did not . . . have a plain or generally prevailing meaning. It therefore must be inferred that had the parties contemplated this specific dispute and intended to prohibit all mergers . . . , they would likely have not chosen the unaided term "transfer" to express that

intent. Rather, they would have specifically addressed mergers, *or they would have provided by appropriate language that "transfer" means all transfers, including those arising by operation of law.*" (emphasis added)), *aff'd* 647 A.2d 382 (Del. Super. Ct. June 9, 1994).[4]

As indicated above, the Sixth Circuit has likewise concluded that conveyances resulting from a merger of corporations are transfers by operations of law. In *PPG Industries, Inc.*, the case upon which the *L & L* court relied most heavily to reach its holding, the survivor of a merger argued that it had succeeded to certain licensing rights previously owned by the merged corporation despite the fact that the original licensing agreement expressly made those rights "non-assignable except with the consent of PPG first obtained in writing." 597 F.2d at 1092. The District Court agreed with this claim, finding that because the merger occurred by "operation of law" there was no assignment or transfer within the meaning of the "anti-assignment" clause. *Id.* at 1093.

On appeal the Sixth Circuit reversed, primarily in reliance upon its interpretation of the Ohio and Delaware merger laws and their effect on property interests:

> The district court also held that the patent licenses in the present case were not transferred because they passed by operation of law from Permaglass to Guardian. This conclusion is based on the theory of continuity which underlies a true merger. However, the theory of continuity relates to the fact that there is no dissolution of the constituent corporations and, even though they cease to exist, their essential corporate attributes are vested by operation of law in the surviving or resultant corporation. *It does not mean that there is no transfer of particular assets from a constituent corporation to the surviving or resultant one.*
>
> The Ohio merger statute provides that following a merger all property of a constituent corporation shall be "deemed to be transferred to and vested in the surviving or new corporation without further act or deed . . . ." Ohio Revised Code, (former) § 1701.81(A)(4). This indicates that the transfer is by operation of law, not that there is no transfer of assets in a merger situation. The Delaware statute, which was also involved in the Permaglass-Guardian merger, provides that the property of the constituent corporations "shall

---

[4]*But see Standard Operations, Inc. v. Montague*, 758 S.W.2d 442 (Mo. 1988), in which the court held that a corporate lessee's merger into another corporation was not an "assignment by operation of law" and therefore was not default under terms of its lease. There, however, the lease provision prohibiting assignments by operation of law referred to involuntary assignments, and the lease gave no indication that merger was transaction requiring the lessor's consent. The court chose not to follow *Citizens Bank & Trust* in large part because the list of examples of assignment by operation of law contained in the lease were all involuntary assignments such as through bankruptcy, writ of attachment, or receivership. The court went through fairly rigorous analysis to determine that a voluntary merger that did not substantially affect the lessor's rights was neither a voluntary nor involuntary "assignment" and therefore was not prohibited by the language of the lease. The court also noted that "assignment by operation of law" was not "a term of legal precision." *Id.* at 444.

> be vested in the corporation surviving or resulting from such merger or consolidation, . . . ." 8 Del. C. § 259(a). The Third Circuit has construed the "shall be vested" language of the Delaware statute as follows:
>
> "In short, the underlying property of the constituent corporation is transferred to the resultant corporation upon the carrying out of the consolidation or merger. . . . *Koppers Coal & Transportation Co. v. United States*, 107 F.2d 706, 708 (3d Cir. 1939)).

*PPG*, 597 F.2d at 1095–96 (some internal citations omitted). The Sixth Circuit then held that since a transfer of interests had occurred, the fact that it had taken place pursuant to law made no difference to its analysis. "A transfer is no less a transfer because it takes place by operation of law rather than by a particular act of the parties. The merger was effected by the parties and the transfer was a result of their act of merging." *Id.* at 1096. The court further noted that if the parties had intended an exception in the event of a merger, it would have been a simple matter to have so provided in the contract. *Id.* at 1095.

Shortly after the Sixth Circuit rendered its opinion in *PPG*, the District of Columbia reached the same conclusion in a case factually very similar to the case at bar. In *Nicolas M. Salgo Associates v. Continental Illinois Properties*, 532 F. Supp. 279 (D.D.C. 1981), the court held that an anti-assignment clause in a partnership agreement was breached by a merger of a corporate general partner into another entity. Two general partners each owned 50% of a real estate partnership. Under the partnership agreement either general partner could withhold its consent to certain specified types of transfers of a partnership interest "for any reason whatsoever." *Id.* at 280. A third party, Bouverie Properties, Inc. ("Bouverie") launched a hostile tender offer for the shares of one of the two general partners, and gained control of that general partner. Bouverie then replaced a majority of that general party's trustees and caused the new trustees to agree to merge the general partner into Bouverie without seeking the consent of the other 50% general partner. The merger was found to have violated the anti-assignment clause of the partnership agreement because, among other reasons, the merger with Bouverie (which was a stranger to the contracting parties' relationship) "effectively forced plaintiff to accept a new partner without his consent." *Id.* at 283.

In reaching that conclusion, the *Salgo* court adopted the rationale applied in *PPG* and rejected the reasoning of those courts that had concluded that a merger is not a "transfer" implicated by anti-transfer or anti-assignment contractual provisions, noting that this "other line of thought . . . centers its concerns on whether the transfer by operation of law has had any adverse effects upon the party nominally protected by

the 'anti-assignment' clause." *Id.* (citing *Trubowitch v. Riverbank Canning Co.*, 182 P.2d 182, 188 (Cal. 1947) ("[A] provision against assignment in a contract or lease does not preclude a transfer of the rights thereunder by operation of law . . . , and . . . if an assignment results merely from a change in the legal form of ownership of a business, its validity depends upon whether it affects the interests of the parties protected by the nonassignability of the contract."); *Ruberoid Co. v. Glassman Constr. Co.*, 234 A.2d 875 (Md. 1967)). In adopting the *PPG* approach rather than the *Trubowitch* approach, the court noted that the parties to the dispute were "extremely experienced business entities" and could have drafted their contract to permit assignments or other transfers by merger. Second, because the agreement provided for certain exceptions to the anti-assignment provisions, the court found that any additional exceptions should have been spelled out. Finally, and perhaps most importantly, the court found that "the practical effect of the merger on the partnership itself" was effectively to force the plaintiff to accept a new partner without his consent, in contravention of District of Columbia Code § 41-317(g), which stated: "No person can become a member of the partnership without the consent of all the partners." *Salgo*, 532 F. Supp. at 283.

Defendants argue that to find the merger in this case effected a prohibited transfer of interests would "place an inordinate restriction on companies who seek to further their financial interests in a manner expressly sanctioned by the applicable corporate code." (Doc. No. 29, at 15.) Defendants further argue that *PPG* and *L & L* are distinguishable on the facts in that those cases "implicate[d] the particularized interests presented by patent licenses [and a] scheme designed to protect public safety." (Doc. No. 47, at 7.) On that basis Defendants claim that logic and public policy dictate adopting the conclusion reached in *TXO Production Co. v. M.D. Mark, Inc.*, 999 S.W.2d 137 (Tex. Ct. App. 1999), in which the Texas Court of Appeals held that a merger did not constitute transfer or disclosure of seismic data to a third party as prohibited by confidentiality provision of a corporate subsidiary's contract with the data owner, and that Delaware, Ohio, and Texas merger statutes authorized use of the data by the surviving corporation after merger.

In *TXO*, however, the court disagreed with the reasoning and outcome of *PPG* and *Salgo* in large part because in those cases, unlike in *TXO,* the corporations merged into unrelated entities, and the non-merging parties were "obviously prejudiced" as a result—"in *PPG*, the third party into which Permaglass merged gained access to a patent right it would not otherwise have had absent the merger, and in *Salgo*, the non-merging

party was forced to accept a partner with whom it did not agree to form a partnership." *Id.* at 141 (collecting examples of cases in which the mergers at issue were found not to be prohibited because a subsidiary merged into a parent corporation and the resulting change was simply one of "corporate form" that did not involve "an increased risk to the non-merging party").

Perhaps even more critically, the Texas Business Corporation Act, which applied in *TXO*, specifically provides that "the rights, title, and interest in property of the merging corporations vest in the surviving corporation upon merger without further act or deed and *without any transfer having occurred.*" Tex. Bus. Corp. Act Ann. art. 5.06 (Vernon Supp.1998) (emphasis added), *cited in TXO*, 999 S.W.2d at 142 n.7. The commentary to the statutory amendment that added the language "without any transfer having occurred" indicated that the legislature desired to avoid the result in *PPG*. *Id.*

*TXO* is obviously distinguishable from the case at bar. Notably, Tennessee's merger statute does not contain language expressly disavowing that mergers result in "transfers." Further, it is clear that courts in Tennessee, as well as courts within the Sixth Circuit construing statutory language from other states that is virtually identical to Tennessee law, have concluded that the "vesting" of interests and property as a result of a merger is, in fact, a transfer by operation of law. To quote Shakespeare: "[A] rose by any other name would smell as sweet." Second, as in *Salgo*, Tennessee law expressly provides that "[a] person may become a partner only with the consent of all the other partners." Tenn. Code Ann. § 61-1-401(i). Because New Shurgard is a new entity that also happens to be a wholly owned subsidiary of a third-party competitor, construing the merger in this instance as not having effected a prohibited transfer of interest would result in forcing the Freegard Partnerships to accept as a partner a person with which they did not consent to become partners.

In short, this Court is not persuaded by *TXO* and finds that it is bound by *Mapco* and *L & L* to conclude that the merger in this case effected a transfer of Old Shurgard's interests in the joint ventures by operation of law. As the Sixth Circuit has found under similar circumstances, "[a] transfer is no less a transfer because it takes place by operation of law rather than by a particular act of the parties." *PPG*, 597 F.2d at 1096); *see also Cincom Sys., Inc. v. Novelis Corp.*, No. 1:05CV152, 2007 WL 128999, at *4 (S.D. Ohio Jan. 12, 2007) (holding that it was bound by *PPG* despite the change in the language of Ohio's merger statute, which took

away any reference to "transfer," based on the Sixth Circuit's unequivocal conclusion that a merger effected a transfer by operation of law, and that the merger in *Cincom* was likewise "effected by the parties and the transfer was a result of their act of merging").

## IV. CONCLUSION

Defendants seek dismissal of Plaintiffs' dissociation claims on the grounds that the merger of Old Shurgard into New Shurgard did not result in the "transfer" of any part of Old Shurgard's interest in the Joint Ventures. Because the Court concludes that the merger resulted in the transfer of Old Shurgard's Joint Venture interests by operation of law, and because the parties to the Joint Venture Agreement specifically contracted to prohibit either party from transferring "any part or all of its Joint Venture interest" whether voluntarily or "by operation of law" without the written consent of the other Joint Venturer, Defendants' motion to dismiss must be denied.

An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge